Mr. Schor. Good morning. May I ask for your support? My name is Michael Schor. I'm from the law firm of Arnold and Pritter, appearing this morning on behalf of Plaintiff Giorgio Foods, Inc. Unlike prior Byrd Amendment cases, this case does not pose the question whether a non-petitioning domestic producer must indicate support. We agree that it does. This case instead poses the question how it must do so. How is this different from Ashley? The That was the only indication of support. Ashley held that the mere submission... Well, I guess what I'm wondering is how come, with respect to India, you're not the same as Ashley, and then with respect to Chile, China, and Indonesia, you're not like Ethan Allen in the Ashley Furniture case? Because we pledged specifically that our questionnaire response as a whole supported all four petitions. We pledged specifically... But you also expressly said you'd take no position on when you were asked to answer whether you support the petition or not. Right. And that creates a factual question for a prior fact to resolve as to whether on balance we supported the petition or did not. But didn't we say in Ashley Furniture that it would be equated with supporting the petition? It might be in Congress, but it's possible. Let me give you another hypothetical. Suppose we checked off the take no position box, but in the response to every single other question, we wrote we support the petition. Did you do that? We did not do that, but we did other things... Were there any statements in the questionnaire saying that you supported the petition? We pled that there were, yes. Where in the questionnaire did you say we support the petition? If you look at the joint appendix on page 164, at the very top we are asked the question, do you have any negative impact of imports from these four countries? We talk about the low price import situation, that imports of canned mushrooms at low prices have and will continue to significantly reduce Georgia food sales. But that's not the same as saying you support the petition. It indicates support. We're not required to state support. So there's nothing in the questionnaire where you say we support the petition? We pled that our I'm not asking what you pled. I'm asking, looking at the questionnaire, is there any statement in the questionnaire? We did not use the magic words that we state support for the petition or we support or anything, particular magic words. The statute does not require a declaration of support. The statute does not require a statement of support. The statute only requires an indication of support. Counsel, let's look back at that same page, page 164, and it's asking you any negative impact of imports and it's specifically asking imports, negative impact of imports from Chile, China. And you're talking about low priced import situation continuing to anticipate a significant loss. What do you mean by that statement? That you anticipate a significant loss as a result of low priced imports? Yes, that's what the question asked about. So, yes, that's as a result of low priced imports from the four countries. And when you say low priced imports, are you referring to dumped imports? The Commerce Department found all those imports to be dumped, so yes. So I'm not sure what you expect the ITC to do when you say affirmatively that you take no positions when they ask you, do you support, take no position, or oppose the petition? I mean, you're supposed to answer these questionnaires truthfully and accurately, right? That's right, but there's no such thing as a... And then you said you take no positions. We're supposed to answer factual questions accurately. There is no such thing as an inaccurate or accurate statement of opinion. Of whether you support the petition. Correct. So you can, what, say that you oppose the petition, but... That's expression of activity, that is... You can say you oppose the petition, but in reality you want the ITC to believe that you support the petition? We can say publicly that we oppose the petition, yet support it privately, absolutely. That is protected by the First Amendment. Let's explore that for a little bit. Why would that be? Why would a domestic producer not want to publicly disclose support for the petition, but yet work frantically behind the scenes to support? The easy answer in this case, and I'll give you a concrete example, Georgia was importing mushrooms from Indonesia into a third country, and they didn't want to disturb their relationship with the Indonesian producer. So they didn't want to publicly support the petition, but they wanted to do so privately. So if you publicly support a petition, that can lead to backlash of some kind? Yes, absolutely, and the court recognized that explicitly in Cathedral Candle. In the 2005 decision in Cathedral Candle, this court specifically allowed the ITC to treat that information as confidential, precisely because it recognized there could be adverse business impacts from the release of that information. Yes, that's exactly what we heard. But you didn't submit any kind of confidential letter to the ITC indicating... We did submit a confidential letter, yes. No, but you didn't submit a confidential letter saying, We said this publicly, but what we really mean is that we support it. No, but we indicated that through other means. How? The ITC came to Giorgio Foods on a site visit. We were there with petitioner's counsel. Petitioner's counsel helped us prepare for that site visit, and when the ITC showed up at the door, we stood there side by side with their counsel. We're supposed to say that you support the petition because you stood next to their lawyer? No, you're supposed to... Well, not you. The trier of fact is supposed to weigh all of the evidence and make a determination of whether or not... It may be that we lose. It may be that a trier of fact concludes that by checking the box, take no position, versus everything else we did, that on balance, the checking the box outweighs everything else. That's a possible determination, but on a motion to dismiss, you can't resolve that question. The site visit, was this a verification? The ITC doesn't strictly do verifications. This was just a familiarization visit. They weren't checking Giorgio's data. They're looking at the production process. Yeah, to learn about the production process. And that's voluntary? It was voluntary. We did not have to do it. This court, Judge Rayner, your decision in the Shea-Sydney case, you specifically ruled on this very question. You held, quote, both the ITC and Customs, however, contend that Section 1675C requires not just the submission of letters or responses, but also the inclusion of an affirmative declaration of support for the petition. But the statute's plain language does not require that producers indicate an expression of support other than through letter. You further said, it is evidence that the ITC considered only the boxes Shea-Sydney checked in making its decision. Such an approach is unreasonable. That's what they're asking you to do here. This is the very same argument they made. It was rejected in a prior decision of this court. That reasoning was not dicta, and it has to be followed. You did quote something right there from Shea-Sydney that said, Section 1675C requires not just the submission of letters or responses, but also the inclusion of an affirmative declaration of support for the petition. So where is your inclusion of an affirmative declaration of support for the petition? It's not required. No, Shea-Sydney does not require, does not require. They rejected that one. That was their argument, and it was rejected. Shea-Sydney held that the submission of a questionnaire response by itself. You're not supposed to interrupt. You keep interrupting. I apologize, Your Honor. In Ashley, they said because you didn't formally indicate support, you don't recover. And it distinguished Shea-Sydney on the ground that there, in the preliminary thing, there was an indication of support, correct? Ashley held that it wasn't enough merely to submit a questionnaire response, that you had to do more to show that you were on the petition. Well, you had to affirmatively indicate support, right? Yes. They did not do anything to affirmatively indicate support. Judge Dyke, I would go back to the very reasoning in your decision in SKF. You specifically held that there was a First Amendment protected interest and expressive conduct of support for a petition. You held, therefore, that it was not sufficient to rely on that alone. You had to have litigation support. In the decision you stated, the statute is capable of a construction to reward litigation support actions rather than the expressions of particular views. It cannot be the case that the mere expression of a particular view is dispositive. We're not saying it couldn't be considered. Of course it's not dispositive, but the question is whether it's necessary, and SKF specifically said it is necessary. SKF did not say it was necessary. SKF, they didn't raise the issue because SKF plaintiffs did not plead that they supported the petition in any way other than through the questionnaire response. It appears to me that you're arguing that you have pled facts in a different manner than what was pled in Ashley. Can you explain that? Yes. The Ashley plaintiffs checked off the box, take no position, and opposed the petition, and they did not plead any other facts that they indicated supported the petition in their questionnaire response or took any other actions in support of the petition. We think we raised a factual question because we pled additional facts. We pled that our questionnaire response includes statements that would only be made by one supporting the petition. We pled that the questionnaire as a whole supported the petition. We pled that we took litigation support actions in support of the petition. The Ashley plaintiffs had pled none of that. What do you mean litigation support? We contributed to the legal fees of the petitioners. We signed a confidentiality agreement with Petitioner's Council before the petition was filed and provide them our business confidential information to enable them to prepare the petition. We continued to provide information to the Petitioner's Council throughout the proceedings. But I thought in Ashley they also, in order to characterize themselves as an effective domestic producer and a supporter of the petition, even though they said they didn't support the petition, they claimed that they assisted the petition process by answering the questionnaire and providing all of this useful, helpful, assistive data. That was all they alleged. We alleged much more, and in Ashley you held that it wasn't enough simply to submit a questionnaire response. Right, because I think here in Ashley it says, a producer's fair statement that it was a supporter is a necessary, though not sufficient, condition to obtain ADP status. So you have to provide, through your actions, support for the litigation for the petition, but at the same time you also have to make a clean statement that you're a supporter. That is directly contrary to the holding in Shea-Sydney that the ITC considered only the boxes Shea-Sydney had checked off. What am I supposed to do with this statement in Ashley? If it's inconsistent with Shea-Sydney, the earlier decision controls. So you're saying we have to repudiate this? I think you try to reconcile the three decisions, and I have a way of doing that, or if you can't reconcile them, the earlier decision controls. Let's go back a little bit. Is my understanding correct that in this situation, the ITC based its decision on whether you were an affected domestic party or not, producer, solely on the box issue? Solely. Exclusively. We pled that, and in the administrative record, when they submitted our questionnaire response as part of the record, they just included that page. They admitted they didn't look at the rest of the questionnaire. All right, Mr. Sherry, you're into your rebuttal time. Thank you. I'll save the rest. Mr. Tomlinson. Thank you, Your Honor. Martin Tomlinson for the United States. Your Honor, appellants in this case are trying to have it both ways. I think it's very clear. They fully admit that they considered all the relevant factors and made a specific business decision, but they did not want to be publicly associated with this petition. And for that reason, they specifically expressed to ITC in this questionnaire that they opposed this petition with regard to India and did not take a position with regard to other countries because they did not want to jeopardize other business relationships. Wouldn't you say that that's forcing a U.S. party to make an expression that they otherwise would not make? No, Your Honor. If by their actions they support the petition, aren't you forcing them to publicly disclose or to make some sort of assertion that's against their business interests? How does that reconcile with the First Amendment? There's no compelled speech here, Your Honor. Nobody from the government ever said, you have to say we support this. Nobody came to them and said, you have to say yes. That's what you're saying now. You're saying if you have a party that assists the petitioner in the early stages of the initiation in gathering data together, getting the domestic producers together, and funding the litigation, and yet they, for business reasons, check a box that says do not support, but everything else they do does support, isn't that a violation of the First Amendment? No, Your Honor, because they were still free to do that. Nobody's saying we're going to take their business away, put them in prison, anything like that. It was simply in accordance with the reward construction of the statute that this court adopted in SKF. We're simply saying the only domestic producers that get rewarded under this statute are those who support the petition. You're interpreting support to mean whether you have expressly checked a box or not. And you're not interpreting support to mean other actions, like making statements such as if low-price import situation continues, we're going to lose more business, we're going to shut down plants, lay off workers. That's exactly what a petitioner alleges. Well, it's exactly what some petitioners allege, Your Honor. All petitioners allege that dumped imports or severely low-priced imports are causing them commercial damage. That's correct, Your Honor. All petitioners do allege that, but not all who allege that are petitioners. And the facts of this case show that very clearly, because you have companies like Giorgio, who may be similar situated in some ways to petitioners, but because of these entangling business interests with overseas companies, decide, well, it's actually not in our best interest for this petition to go forward and be successful. And, therefore, even though maybe we are suffering some harm, we actually benefited more in other ways if this petition does not go forward and ultimately be successful. So, therefore, we don't want this petition to succeed. And they're asking ITC to do something, I think, very troubling, and, frankly, probably impossible. How can they not want the petition to succeed if they help pay the lawyers' fees in order to bring the petition? They provide information and make statements such as this. They don't have to make a statement that low-priced imports are the cause of lost business, of injury. This is an injury statement here, and it identifies how they're being injured. That's correct, Your Honor, but injury is a distinct concept from support. How is it? I mean, if you're saying I'm being injured by these low-priced imports from these three countries, how is that not supporting, in support, a statement that's made in support of the petition? ITC is going to look at that and go, well, here we go. Here's another further evidence, substantial evidence, of material injury. Your Honor, that may be a question better suited to Mr. Schor, who can represent exactly why his client decided not to support. Isn't the answer that in these analogous areas of attorneys' fees and False Claims Act, the fact that you actually have to be a plaintiff to get attorneys' fees, as opposed to providing support behind the scenes, has always been the marker of whether you recover or not. And that's not been seen to be a First Amendment problem. Certainly, Your Honor, and this Court addressed this in SKF, and certainly I do think it's important for this Court to keep in mind the two analogies drawn by this Court in SKF, which was that supporters under the CDSOA are like quid tam petitioners, and quid tam petitioners affirmatively bring an action, affirmatively put their name on the petition as plaintiff, bring an action, as opposed to the other analogy, the counter analogy this Court used, was third parties that may respond to discovery. And you can provide discovery responses, either under subpoena or otherwise, that may actually be very helpful, ultimately, in resolving the action. In a government antitrust case, if you don't sign on as a plaintiff, but monetarily support the plaintiff and help gather information, you have no claim to attorneys' fees, right? That's correct, Your Honor. I have a question. Isn't it true somewhere that it says that ITC, to try to figure out whether there's a material injury to a domestic industry, they have to figure out whether at least 25 percent of the domestic producers are indicating support for the petition? Your Honor, actually, I believe the 25 percent number is related to commerce's initial determination of whether there's industry support. When there's a petition filed on behalf of industry, then at a later stage ITC actually makes a material injury determination. There's no hard and fast bright line rule. The 25 percent does not apply to that. Okay, and so whether it's commerce or ITC, when they are looking at these questionnaire responses, are they trying to figure out support for the petition based on whether they're checking the three boxes? Or in addition to looking at those three boxes, do they look at all the sum and substance of the questionnaire responses to glean whether or not, in fact, when you look at the questionnaire responses as a whole, you can conclude that there is support for the petition, in spite of the fact that maybe the box that says no support or take no positions has been checked. Do you understand my question? I do, Your Honor. That question, I'm happy to answer if you'd like. That question may be better suited to a counselor from the ITC who's following me who may be better able to represent exactly what the ITC looks at in making this determination. My understanding is that they're not strictly limited to the one question when making the injury determination. But you were talking about the initial determination by commerce, and commerce goes by the boxes, right? That's my understanding, Your Honor. And that's to meet the standing, the 25% standing issue, correct, to initiate a petition? To determine whether there's industry support in a petition that's been filed by those within the industry. I believe there's a separate procedure by which commerce can initiate an action on its own. That's correct. And the boxes themselves on the questionnaires, those boxes predated the Byrd Amendment. Is that correct? That's correct, Your Honor, and I think it's important to note that Congress was likely aware of this. The Byrd Amendment doesn't refer to the boxes, does it? It does not specifically refer to the boxes, but it's important to note that the Byrd Amendment only gave ITC 60 days to make determinations as to who was a supporter with regard to every anti-dumping order then in existence, which there were hundreds. And so it would have been unreasonable for Congress to expect ITC to read through hundreds of thousands of pages and somehow discern what a party's true intent was instead of simply taking them at its word. And I see that I'm over my time. I don't want to cut into my colleagues' time, so unless the Court has any further questions for me. Okay, thank you, Mr. Tomlinson. Thank you. Please, the Court. Sorry, Your Honor. It's that time of year. In this particular instance, did ITC look beyond just checking the boxes and making its decision? The ITC looks at the questionnaire. The questionnaire asks the specific question. I'm asking, did the ITC simply look at the box that was checked, or did it also look at the content of the questionnaire response to determine whether there's support expressed within the content? It doesn't just go to the questionnaire and simply look at the question. It will look at the questionnaire in total. If there is nothing, and there is no expectation that there will be anything else, because there is the direct answer to the question that's at issue. Do you support the petition? Do you oppose the petition? Do you take no position? It would seem that an answer to a question that's that direct would be dispositive in terms of the position of the party asserting that. I'm not understanding this. As I understand it, there's a bright line rule for the initiation of these proceedings, which says there has to be 25% support, correct? Yes, sir. And that's not something the ITC administers. No, sir. That's commerce. We had a lot of confusion throughout these cases about that. That's a commerce. But that's a bright line rule at commerce. It's in the statute. And it's based on the questionnaire. No, sir. It is not based on the questionnaire. It's not. That's where the confusion enters. When a petitioner files a petition, they file at the commission so we can get ready, because we don't have a lot of time in the beginning. And they file it at commerce. It's commerce's obligation under the statute to initiate the investigation. On the face of the petition, there must be at least 25% of industry support. So the industry must have supported that, or commerce will reject the petition. And industry is both producers and workers who produce. It can be, yes, sir. It's the production and who represents what portion. So someone who checked oppose or don't support isn't counted in arriving at the 25%. That is not part of their act. They do their exercise separately from what the commission does. The commission sends out its questionnaires after initiating. I understand, but I'm not asking you about what you do. I'm just trying to confirm the difference between what you do and what commerce does. I understand that commerce applies a bright line test from the face of the petition in determining the 25%. Yes, sir. But that when later on in the proceeding, when it comes to a determination of injury, it's beyond the face of the petition. No, sir. No. Well, they only need to get to the 50% threshold. The commission tries to capture the entire industry. So we'll send questionnaires to the entire industry. They don't need more than 50% in order to initiate the petition of industry support. And it doesn't even have to be a – The boxes are irrelevant to material injury. It is one of the considerations that the commission uses in making its – Really? I mean, can't you check a post on the box, but yet are you saying that the ITC will not use the data in reaching its injury determination? No, of course the ITC will use the data, Your Honor. But to go to the data, the response is what is the – your circumstances respect particular subject imports. We are being injured by those particular subject imports, but they still may have said that they oppose the petition for reasons they oppose the petition. Having nothing to – they might be injured, but they might not want duties. That's the question we're asking. Do you want us to conduct an investigation that will lead to a material injury finding, or do you oppose such a thing? We're not asking them about – What's your response to your friend's response to a question that there could be pure commercial reasons as to why they make the decision whether to check a particular box or not? That may be true. But they're making that decision in the context of do you want duties imposed versus what are your other commercial – What about a situation here, for example, where they tell you they do want duties imposed in the content of their questionnaire response? It doesn't say that, Your Honor. What they're giving you is their commercial condition with respect to the subject import. Well, here it's making a statement that it's low-priced imports, that if it continues that there's going to be significant loss of its business. It's stating, I'm being injured by low-priced imports. Isn't that saying – doesn't ITC take those type of statements as evidence of injury? Yes, but not evidence of industry support for the petition. You've answered that over here. You've said, I'm being injured by these imports, but I don't want duties for whatever reason. It's immaterial to the commission why you don't want duties. Do you require that they say in their – that parties assert I want duties or I don't want duties? We ask the question, Your Honor. In every – my time is running out. I'm never going to finish the answer. In every single investigation, preliminary and final questionnaire responses, in the phases, there is a staff report that is developed for each phase of the proceeding. So in the prelim, we send the questionnaires, get the questionnaires back, staff looks at them. They see that there's a tabulation in the staff report. Who the domestic producer is, how much they represent, where they are, how many factories they have, where they're located, and their position on petition. Do you support, do you not support, do you oppose? What is their position? If you had a circumstance that the – it comes in, like Mr. Schor was saying, oh, well, we checked, we opposed, but throughout the rest of it, we wrote, we support, we support, we support. That would trigger a response from the staff or certainly the commission. What are you trying to say here? Because we tabulate this, and you're saying different things. That's why I say when you ask me, do they, do they, we only look at check the box, is because invariably that's where the parties will state their case, where we ask them the questions. So in this case, did you use a staff report to make the determination whether they're an affected domestic producer? No, Your Honor, we used the questionnaires. You only relied on whether they checked the box or not? Their statement, well, they didn't check the box, they actually wrote it out, yes. Right, they wrote it out. Their statement and their questionnaire response, yes. Okay. Thank you, Your Honor. Thank you, Mr. Corsi. Mr. Gallagher. Your Honor, it's Michael Corsi from Kelley Dry and Warm. On behalf of Monterey Mushrooms, who has been a domestic producer and petitioner since 1998 when the petition was filed, I just have two points I'd like to make, but I think they go to the heart of what has been concerning you here. Did Georgia assist you in bringing the petition? Yes. Did they pay attorney's fees? I do not know. That was handled by an escrow agent. How attorneys were paid, I did not know. Who contributed? Did they meet with you in determining? Yes, they met with us under a very harshly decoded confidentiality agreement that they required. The whole point here is Georgia tried to control this investigation from the very beginning, from behind the scenes. We're talking about this questionnaire response. If you look in the JA, at the top of every page it says business proprietary. That was a secret. Whatever they wrote in there was a secret to the ITC. The ITC wasn't going to tell everyone that Giorgio is supporting the petition. They, in a confidential document... What is the point that you're making? The point is that they could have protected their... They didn't want the world to know. They didn't want their business people to know that they didn't support the petition. You mean they could have said... They could have checked the boxes, support, it's an APO document. It didn't become public until the Byrd Amendment came into force. Then there was a little fight between Giorgio and the ITC, and Giorgio ultimately said, we'll go public at this point. Back at the investigation. So this is really misleading to be giving all this, saying that this was forcing Giorgio... When you checked the box originally, or they wrote in the margin, was that under the Byrd Amendment? Were they responding? No. They were responding to the ITC. Right, this was before the Byrd Amendment. Yes. So when they were deciding what I'm going to do with this box, I mean, the Byrd Amendment wasn't even a consideration at that point, correct? It was not a consideration, but it was a concern of the ITC, obviously, to determine whether a domestic producer supported the petition or took no position or opposed it. So that has had a material effect on the outcome of investigation of the ITC's consideration, considering all this topic, for decades. For as long as the questionnaire response has been out there. There's a reason for it. Is that because they're looking for evidence of material injury? They're looking for evidence of who supports, generally. Is there a very general consensus among the group that they're being injured? What does having support for a petition have to do with material injury? What's the connection? Let me, I guess, try to answer that by going back to the conference department, where Giorgio publicly opposed the Indian. I'm talking about the ITC. Well, but this was part of the ITC investigation. It's record, and I think this unmasks the other part of what Giorgio is trying to put over here, that it never took an action in opposition to the petition. That was a potential death blow to all four cases. Giorgio says, it's in our brief, all the pages are mocked up. They said, we are, and have been, about half the domestic industry. At initiation, Congress has two questions. One, taking the whole industry, does 25% support? Did you get that? We have another question. Counselor, you heard us, we were discussing part of the administrative record in this quoted section here that the appellant brought up regarding low price imports. Do you see that as evidence of injury? No, I do not see that as, it's not evidence of support. I didn't ask that. I didn't ask that. Is it evidence of injury? It's evidence of some injury. There's no mention there about which countries are importing the product. Well, I mean, the dumping case involves specific countries, and it's referring to the low price import situation. And the heading of the question is China, Chile, and India, and Indonesia. And it's responding to that. Are you saying that this is not an expression or evidence of injury? It is an expression of injury, but it's certainly not an expression of support. Well, but if a party is providing evidence that goes to prove injury that's positive, probative of material injury, why is that not supportive of the petition? Well, because they are doing it secretly, latently. That's the word. The answer is that in SKF we said that's not support. It isn't. But I think really you're missing... Let me ask you a question. Yes. They line by line detail serious injury to them due to this alleged dumping. But they say officially they don't support, they don't oppose, they take no position on the petition. How does that checking of that take no position box really impact the investigation? But that's a materially different case than here. I'm asking a question. He's asking you how the failure to check the box while indicating injury affects the investigation. Well, and how does it affect in the realm of aspects of characteristics of that questionnaire that the ITC looks at combined with the other questionnaires, the checking of the box might be of little relevance for the particular question of injury. But the ITC does go through. It went through in this case to make a determination of whether Georgia was in the industry or not. What you're saying is there's a difference between support and the percentages that are necessary for support in the question of injury. Is that correct? Say that one more time, Your Honor. I'm sorry. Commerce, in determining whether to initiate an investigation, looks at the questionnaire to see whether there's 25% support, correct? Commerce does not look at questionnaires, at the ITC questionnaire. And I think there's real confusion on the panel's part about what exactly happens at the Commerce Department. A petitioner comes into the petition and tries to present information answering both those questions. We have enough petitioners here to satisfy the 25% question. Commerce, you don't have to do anything. We have enough petitioners here to answer the second question, which is 50%. Of those domestic producers qualified to answer the second question, do you support, some of the domestic producers are importers, like Georgia was. Now, if you would only look at Commerce's initiation of it. Wait, wait, wait. That's done from the face of the questionnaire? No. This is done after the fact. Commerce will call them and basically will poll the industry. That's what they call it. There is no questionnaire in existence prior to the initiation of the petition, correct? No, there's requirements. You have to satisfy the requirements. Oh, no, no. There's no, this questionnaire that we're talking about. Oh, the ITC questionnaire. Yeah. It doesn't even exist. Well, before. I mean, you have a draft that parties look at and all. It's issued days after the petition is filed. So the petition is initiated. In fact, you as a petitioner have meetings at the Department of Commerce, and you kind of sort out whether there's enough support or not. You know, that's, you have the requirement to make this showing. And if it can't. The answer is yes. Before you file, you have meetings at Commerce, and you take a look at the petition. Yes, but look what happened here, your Honor. In this case, I keep trying to bring your attention back to this case. The domestic producers have accounted for 50% of the industry, filed a letter with Commerce, and said we oppose India. A public letter. We oppose India. The petitioners, my clients, were scared to death that that was going to be granted for two reasons. Because if that won, India's gone. Okay? India's gone. This is an accumulation case. The other three countries, you're going in with four countries at the ITC saying ITC treats these as one country. These four as one country. All of a sudden, boom, India's gone. Those numbers are out. That's an amazingly hostile action. Stop. What we're trying to understand is when you say India's gone because they check, oppose. Because they oppose. Why is that? That's what we're trying to understand. Why is that? Because that's the rule. So what happened is Commerce looked at it and said, well, we could disqualify Giorgio because Giorgio imports. And we could say they're not able to vote on the 50% question. And Commerce said, well, we're not going to do that because the way we look at the numbers, the remaining petitioners have more than 50%. Now, this was a close question. My clients sweated real bullets about what the answer to that was going to be. Only Commerce knew. And it turned out okay for us. But there it is. Let me ask you. Wait. Who is issuing this questionnaire that we're all debating over? It's ITC, right? No, the Commerce department. It's the Commerce? Because Commerce has jurisdiction over the initiation question. And that's basically the question of do the petitioners have standing to file the petition? Okay. And is the initiation question dependent on support or opposition? Yes. You have to say that. And if you read – it's right in the record. If you read, Commerce says Giorgio said they oppose the India case. So that affects the initiation. Well, if they were more than – yes, it does. It does. And it has happened. There are many examples of cases that have gone down the tubes where the domestic industry couldn't come up with the 50%. Now, that's what my clients were afraid of. Giorgio did not want the India case. And that's why in this questionnaire response – Are there cases where domestic parties gather together and they say, I want you to determine whether you even need me to initiate standing? That's all confidential. That certainly didn't happen in this case. In the practice. We're talking about events leading up to the initiation. Yes. It is common. It could be that the parties agree amongst themselves, it's okay, you stay out because we have enough to initiate. Well, it's usually a decision made by a company on its own. It announces it's not going to do this in hopes other members will understand. But they basically say we're with you. All this time we've been talking about meeting the domestic producer worker requirement in order to initiate a petition. And the ITC questionnaire in question at this point isn't in existence. Now, my question to you is this. What's the relevance of what box you check to a material injury determination? Again, I go back and say it's been part of the questionnaire. Forever. Forever. But I'm asking you regardless of what box you check. Yes, it does have an effect. I know this. I've worked on many dozens of dumping cases and injury cases at the ITC. You want those boxes checked by domestic producers affirmatively, aside from the Burt Amendment. It has an effect on the staff who reads it. They start to look at it and say this is an iffy case. There's not too much support for this. We've got people out there on the wall. So is it the situation where somebody checks a box on an ITC questionnaire that says I oppose, for example, and yet they answer all the questions and supply all the data, import, domestic shipment, domestic consumption data, the whole bit. They supply all of that. Are you saying that ITC ignores all that data? No, it doesn't, but in most cases you don't get that. We at Lengthen, I believe, go through line by line. But that's not this case. In this case there is data. Are you saying that the ITC ignored that data? No, the ITC did not ignore the data. It was part of the data just as it was. But there, for example, was no affirmative data about India. General statements were injured. Well, they say they opposed it and they decided they're not going to give any data to the ITC. That's what makes the other three countries so remarkably different. No, see, here's what you're missing. These are the accumulation cases. Had Giorgio succeeded at commerce in getting the India case stopped, that would have threatened the other three cases. The ITC ultimately, for each of those three injury cases, Chile, Indonesia, China, included imports from India. It couldn't have done that had Giorgio been successful in blocking the case from going forward. This is a very aggressive action against the petition. Even in a situation where somebody checks a box, I do not support the petition of India. It is a case that the ITC still uses the data, right? Like in this case. Yes, you're right, Your Honor. It doesn't matter what box you check. The ITC is going to get the evidence that's on the administrative record and make its injury determination. Yes, Your Honor, but what I'm suggesting is… In terms of the initiation, it does matter. It matters very much, and it matters what… Excuse me. This case does not involve initiation. It's not an initiation case, is it? Oh, it is an initiation case because have they want – this is where we have a disagreement, Your Honor. This is the first step of a case, the initiation. If you don't go, you're dead. It's over. There's no go back. When you have an accumulation case, it's like you've filed one case together. If India doesn't go forward, ITC doesn't look at anything. It's non-subject imports. They're not under investigation. But she just told us that Commerce doesn't make the initiation on the basis of who checked what box. But see, this is not the point I'm making. Georgia says it took no actions to oppose the petitions during the ITC's investigation. Well, the action of opposing in Commerce – I mean this really has not gotten the examination it deserves. They came out and opposed. They tried to stop that investigation. Had they succeeded, that would have had a ripple – more than a ripple effect. It would have put in danger the success of the other three cases. So Georgia coming in and saying, look, we entirely support the petition. We've done everything we can to support the petition. Look at everything. Look at this. Look at this. This is a huge, hostile action. Georgia did not want the India case to go forward. Okay. I think we're out of time. Thank you. Mr. Shore? That was outrageous. Mr. Corsi just testified – No, no. Testified incorrectly – Wait. Don't stand up here and say that something's outrageous. You know, it's a – hyperbole like that is not useful. I apologize, Your Honor. This case was decided on a motion to dismiss and a motion to amend. You do not look for facts beyond the four corners of the petition – beyond the four corners of the complaint. Nothing Mr. Corsi talked about is in our complaint. You cannot consider it at all. Moreover, I want to be perfectly clear, as Judge Rayna perfectly understands, the initiation phase of the case has nothing to do with this questionnaire. Nothing whatsoever. The Commerce Department must decide within 20 days of the filing of a petition whether to initiate a case. These questionnaires aren't returned until after that date. The ITC questionnaire plays no role in initiation, and you can't say that it had some impact on the investigation because what we said to the ITC did not affect Commerce at all. What Mr. Corsi says is, well, you told the Commerce Department that you opposed the investigation. And if the statute put the Commerce Department investigation at all on the record here, that might be relevant. But the statute, the Byrd Amendment statute, directs the Commission to consider the ITC record, and the ITC record alone, not the Commerce Department record, not statements we made before the Commerce Department. So everything Mr. Corsi talked about, about the Commerce Department, is completely irrelevant to this course analysis. The questionnaire at issue here is not used by Commerce at all. They are not allowed to. If it's ambiguous on whether the 25% test is made, the statute directs the Commerce Department to poll the industry itself. It does not rely ever on the ITC questionnaire. And I just want to make that clear. Judge Sykes, I'd like to address your analogy to the QI-TAM and attorneys reshifting statute. If this statute just awarded benefits to petitioners, we would have no case. But the statute goes beyond the attorney's fee statutes and the QI-TAM statute, because it awards benefits to petitioners and to those that indicate support. And the question here is, what does it mean to indicate support? So to say that it's okay just to provide benefits to those that bring the litigation doesn't resolve the statutory question here, because we have a different statute. Okay. Thank you, Mr. Shor. Just one more question, if I may. Mr. Corsi made much of the fact that if we checked off the box opposed, it would have been secret. That is untrue. A party responding to a commission questionnaire, even though it says business proprietary, has no idea what the ITC is going to do with that question. And the ITC frequently accumulates the data, they accumulate the responses, and they provide summary information. In the Cathedral Candle case, this court decided in 2005, you examined the question of whether the ITC was justified in treating the response to the petition support question as confidential. You held it to be a question and ultimately ruled that it could. So not until that case, which happened well after Giorgio answered the response, was there certainty that that petition support response would be kept confidential. Okay. Thank you, Mr. Shor. Thank you to all counsel. The case is submitted. Now we'll take a brief recess. All rise. Now the court will take a short recess.